**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CV06-1766-PHX-DGC |
| Plaintiff, | **ORDER** |
| vs. | |
| $32,000 in U.S. Currency, | |
| Defendant. | |
| and Regarding the Interest, if any, of Edward Leflore. | |

Edward Leflore ("Claimant") has filed a motion for summary judgment on Plaintiff United States of America's forfeiture claim regarding $32,000 seized from Claimant. Dkt. #8. The Court has reviewed the memoranda submitted by the parties. Dkt. ##8, 15. For reasons discussed below, the Court will grant Claimant's motion.

**I.     Background.**

On March 1, 2006, Phoenix police detectives received information regarding two individuals traveling by air from St. Louis, Missouri to Las Vegas, Nevada, with a connection in Phoenix, Arizona. Dkt. #15-2 ¶ 2. The individuals were identified as Lashone Owens and Claimant Edward Leflore. *Id.* Claimant's one way ticket was purchased with a third-party credit card the night before the flight. *Id.* ¶¶ 3, 17. During a layover in Phoenix, investigators made consensual contact with both men and questioned them separately. *Id.* ¶¶ 6, 9.

1    Claimant provided an Indiana driver's license, but did not have his airplane ticket, and
2 instead presented a ticket in the name of Kristi Waffle. *Id.* ¶ 6. He told investigators that
3 Owens was his uncle, but corrected that statement on further questioning, saying he had
4 known Owens for years and always referred to him as an uncle. *Id.* ¶ 7. Claimant did not
5 know where Owens lived. *Id.* ¶ 8.

6    Owens told investigators that he did not know Claimant, but had seen him on the
7 plane. *Id.* ¶ 9. Investigators conducted a consensual search of Owens' bag and allowed him
8 to proceed to the gate for his next flight. *Id.* ¶ 10.

9    When told that Owens claimed not to know him, Claimant stated that Owens was
10 probably nervous and "did not want any part of this." *Id.* ¶ 12. Investigators asked Claimant
11 if he was carrying drugs, drug paraphernalia, or large amounts of money, to which Claimant
12 responded that he was not carrying drugs or paraphernalia, but was carrying money. *Id.* ¶
13 13. Claimant then removed three bundles of cash totaling $32,000 from his pockets, as well
14 as $560 of "personal" money from another pocket. *Id.* ¶¶ 14-15.

15    Claimant told investigators that Owens and he were traveling to Las Vegas to gamble,
16 but had not made a hotel reservation or bought a return ticket home because they were not
17 sure how long they would stay. *Id.* ¶ 16. Claimant explained that the $32,000 came from the
18 sale of houses in Indianapolis that he bought in 1999 and 2001 for one dollar and later sold
19 for $40,000 and $54,083.98, respectively. *Id.* ¶¶ 19, 30-31. He also stated that he had
20 withdrawn the money from a safe deposit box due to a distrust of financial institutions, kept
21 two open bank accounts containing approximately $300 each, and had between $30,000 and
22 $50,000 at his house. *Id.* ¶¶ 20-22, 32. Claimant stated that his only other income source
23 was gambling. *Id.* ¶ 30. Claimant told investigators that he had five children with five
24 different women, paid child support to only one mother but "takes care" of the other children,
25 owned a vehicle but did not owe car payments, and did not have a permanent residence but
26 lived with family members. *Id.* ¶¶ 28-29.

27    Claimant admitted to investigators that he smokes marijuana daily. *Id.* ¶ 25. In 1998,
28 Claimant was convicted of possession of marijuana. *Id.* ¶ 33. At the airport, a narcotics

1  detection canine certified to detect marijuana, cocaine, methamphetamine, and heroin, sniffed
2  Claimant's $32,560 and gave a positive alert. Dkt. ##1 ¶ 27, 15-2 ¶ 26. Upon being
3  informed of the positive dog alert, Claimant stated that the $560 of personal money was with
4  him recently when he smoked marijuana and that he had recently carried a bag of marijuana
5  next to that money. Dkt. #15-2 ¶ 27.

6  Based on the above information, the investigators believed Claimant to be a drug
7  courier. *Id.* ¶¶ 34-35. They seized the $32,000 from Claimant and returned the $560 of
8  personal money. *Id.* ¶ 36. The Government initiated this forfeiture action by filing a verified
9  complaint on July 17, 2006. Dkt. #1. Claimant has not been charged with a crime relating
10 to the seized currency.

11 **II.    Discussion.**

12 This case is governed by the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA").
13 Prior to CAFRA's passage, the Government had the initial burden of establishing probable
14 cause connecting seized property with illegal drug transactions. The burden then shifted to
15 claimants to prove, by a preponderance of the evidence, that the money was not connected
16 with illegal drug activity. *See United States v. Currency, U.S. $42,500*, 283 F.3d 977, 980
17 (9th Cir. 2002). Congress passed CAFRA to "transfer[] the burden of proof to the
18 government and require[] the government to establish forfeiture by a preponderance of the
19 evidence rather than by the [former] lower probable cause standard." *United States v.*
20 *$80,180.00 in U.S. Currency*, 303 F.3d 1182, 1184 (9th Cir. 2002). When, as here, "the
21 Government's theory of forfeiture is that the property was . . . involved in the commission
22 of a criminal offense, the Government shall establish that there was a *substantial connection*
23 between the property and the offense." 18 U.S.C. § 983(c)(3) (emphasis added). The burden
24 then shifts to the claimant to prove by a preponderance of the evidence that the claimant is
25 an innocent owner of the property. 18 U.S.C. § 983(d). The determination of whether the
26 Government has met its burden of proof is based on the aggregate of the facts, including
27 circumstantial facts. *Currency, U.S. $42,500.00*, 283 F.3d at 980.

28

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After CAFRA, the Government bears the burden of proving that there is a substantial connection between the $32,000 and certain crimes. Construed liberally, and consistent with *Celotex*, Claimant's pro se motion for summary judgment expresses the belief that the factual record before the Court does not allow the Government to meet this burden.

The Government attempts to establish a substantial connection between the seized money and two different crimes. First, the Government alleges that the money was connected to drug trafficking crimes in violation of Title II of the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*, and is subject to forfeiture under § 881(a)(6). In a civil forfeiture proceeding under this provision, seized money is subject to forfeiture if it was: "(1) furnished or intended to be furnished in exchange for a controlled substance; (2) traceable to such an exchange; or (3) used or intended to be used to facilitate a violation of federal drug laws." *United States v. $191,910 in U.S. Currency*, 16 F.3d 1051, 1071 (9th Cir. 1994). The Government also alleges, somewhat cryptically, that the currency was connected to the crime of money laundering in violation of 18 U.S.C. §§ 1956-57.

The Government discusses several factors that, in the aggregate, allegedly demonstrate a substantial connection between the seized money and the crimes. The Court will address each factor separately.

**1.    Large Sum of Currency.**

The Government argues that the $32,000 found on Claimant is per se evidence of a crime or potential crime that would allow forfeiture of the money. Dkt. #15 at 6. The Ninth Circuit has held that possession of a large amount of cash is strong evidence that the money was used or intended to be used in a drug transaction, but that standing alone such evidence

- 4 -

is insufficient to establish probable cause. *Currency, U.S. $42,500.00*, 283 F.3d at 981-82. *A fortiori*, Claimant's cash is not alone sufficient to establish a substantial connection between the money and drug activity by a preponderance of the evidence. *See $80,180.00 in U.S. Currency*, 303 F.3d at 1184.

Claimant admitted that he possessed a large quantity of cash and turned it over to investigators. Dkt. #15-2 ¶ 13. The cash was held in Claimant's pockets, and was not concealed in a manner traditionally associated with drug crimes. *See, e.g.*, *Currency, U.S., $42,500*, 283 F.3d at 981 (finding "significant" the fact that money was wrapped in cellophane rather than simply clothing); *United States v. $129,727 U.S. Currency*, 129 F.3d 486, 490 (9th Cir. 1997) (finding "the nexus to drugs was provided by the distinctive manner in which the currency was wrapped in fabric softener sheets and plastic wrap"). Furthermore, Claimant explained to investigators that the money came from the sale of two houses in 2001 and 2005, and that he had thousands of dollars more at home. *Id.* ¶¶ 30-32.[1]

The Government has not produced any evidence that Claimant's explanation is not true. It argues simply that Claimant's reported assets would have been insufficient for Claimant to support his five children and provide assistance to his aunt, as Claimant told investigators. Dkt. #15 at 6-7. But Claimant also told investigators he had no car payment, did not own a house, and did not pay taxes. Dkt. #15-2 ¶¶ 24, 28-29. The Government has not shown the extent to which Claimant takes care of his children and does not explain why

---

[1] Claimant explains that he earned the seized money by selling houses he remodeled in Indianapolis. Dkt. #8 at 6. Plaintiff has attached quitclaim deeds for both of his purchases and sales statements from both sales. Dkt. #8-2. The Government argues that the Court should not consider the deeds and sales agreements because they lack a proper foundation. The Court agrees. "A document which lacks a proper foundation to authenticate it cannot be used to support a motion for summary judgment." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1551 (9th Cir. 1990) (citation omitted). A court may only consider documents that are authenticated by and attached to an affidavit that meets the requirements of Rule 56(e), and the affiant must be a person through whom the exhibits could be admitted into evidence. *Id.* at 1550-51. Claimant has not attached such an affidavit.

1  a factfinder should assume Claimant is too generous in the support of his children to allow
2  him to have $32,000 in cash.

3  The Government also argues, without evidence, that Claimant's maintenance of two
4  bank accounts containing $300 apiece, which Claimant readily admitted, is irreconcilable
5  with his theory that he once kept his money in a safe deposit box, but had withdrawn it over
6  time because of a distrust of banks. Dkt. #15 at 7. Keeping large sums of money at home
7  and small sums in a bank, however, would be consistent with a distrust of banks.

8  **2.   Dog Alert to the Presence of Drug Odors.**

9  The Government next contends that the positive dog alert to drug odors on Claimant's
10 money is further evidence that the money was substantially connected to drug trafficking
11 crimes. Dkt. #15 at 7. The Government relies on Ninth Circuit cases that have held that dog
12 alerts provide a strong basis for connecting the currency to illegal drugs. *Id.* (citing
13 *Currency, U.S., $42,500*, 283 F.3d at 982 (9th Cir. 2002); *United States v. $22,474 in U.S.*
14 *Currency*, 246 F.3d 1212, 1216 (9th Cir. 2001)). In these cases, however, the dogs alerted
15 not to the scent of drugs on money, but to the scent of transient by-products of illegal drugs.
16 The Ninth Circuit has given weight to such evidence because these sophisticated dog alerts
17 indicate that the money has been in recent contact with illegal drugs.

18 Less sophisticated dog alerts have been given little weight because studies show,
19 regrettably, that a large percentage of the nation's money is contaminated with illegal drugs.
20 *United States v. U.S. Currency, $30,060.00*, 39 F.3d 1039, 1042 (9th Cir. 1994). The Ninth
21 Circuit has held that such non-sophisticated dog alerts are of very little probative value.
22 *United States v. $49,576.00 U.S. Currency*, 116 F.3d 425, 427 (9th Cir. 1997). The
23 Government has not shown that this case involves a sophisticated dog alert that would detect
24 only transient by-products of illegal drugs. Moreover, the Government did not take steps to
25 test the $32,000 alone, outside the presence of the $560 of personal money that Claimant
26 admitted had been in contact with marijuana. The Court will therefore accord the dog alert
27 minimal weight.

28

### 3. Claimant's Drug Usage.

The Government contends that Claimant's admission to smoking marijuana on a daily basis and his conviction for marijuana possession help establish a substantial connection between the currency and drug activity. Dkt. #15 at 8. In one of the Government's cited cases, the Ninth Circuit found that two drug-related possession convictions and another drug-related arrest demonstrated "more than a mere suspicion" of illegal activity. *See United States v. U.S. Currency, $83,310.78*, 851 F.2d 1231, 1236 (9th Cir. 1988). Claimant, however, was convicted of possessing marijuana once, in 1998, a criminal record substantially less probative.

Attempting to show that Claimant's admitted daily use of marijuana supports its burden of proof, the Government asserts that "a claimant's record of drug activity is a highly probative factor in the forfeiture calculus." Dkt. #15 at 8 (citing *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 286 (6th Cir. 1992)). The case cited by the Government, however, discussed drug "activity" in the context of dealing, not using, drugs. The Government has not cited, nor can the Court find, cases holding that an admitted personal use of drugs – without evidence of drug trafficking or drug related convictions – helps demonstrate a substantial connection between seized currency and drug trafficking. Claimant's drug use is accordingly given little weight in the Court's analysis.

### 4. Additional Circumstances.

The Government contends that various inconsistencies in statements made by Claimant and Owens support its theory that the seized currency was substantially connected to a crime. It focuses on Owens' denial that he knew Claimant and Claimant's statement that Owens was his uncle. Dkt. #15 at 7-8. The Government does not explain why these admittedly inconsistent statements are particularly probative of narcotics trafficking or money laundering, as opposed to other crimes. *See United States v. A) $58,920.00 in U.S. Currency B) $38,670.00 in U.S. Currency*, 385 F.Supp.2d 144, 152-53 (D. P. R. 2005) (finding that inconsistent answers by two people about whether they traveled together might

1 | be suggestive of possible criminal activity but were not a "strong indication of the requisite
2 | narcotics nexus").

3 The Government cites cases in which the claimant lied about the quantity of the
4 money he was carrying and the location he was going. Dkt. #15 at 8 (citing *$22,474.00 in*
5 *U.S. Currency*, 246 F.3d at 1217; *United States v. $215,300 United States Currency*, 882
6 F.2d 417, 419 (9th Cir. 1989)). These types of inconsistent statements reflect an effort to
7 conceal drug proceeds or travel plans to known drug trafficking areas and have been found
8 "to support an inference that the money [is] drug-related." *$22,474.00 in U.S. Currency*, 246
9 F.3d at 1217. Claimant made no inconsistent statements regarding the amount of money he
10 held and showed authorities the $32,000 willingly. Nor did Claimant make any inconsistent
11 statements regarding his travel to Las Vegas. The Government would have the Court infer
12 that Claimant was traveling to Las Vegas for drug-related reasons, yet it has come forward
13 with no facts supporting this inference. And carrying significant amounts of cash to Las
14 Vegas would seem more plausible than to other destinations.

15 In other cases, investigators have attempted to corroborate a claimant's account of
16 how he obtained the money and why he was traveling. *See, e.g.*, *id.* at 1214-15; *U.S.*
17 *Currency, $30,060.00*, 39 F.3d at 1040. Here, however, the investigators simply chose not
18 to believe Claimant. They may have been suspicious that Claimant was engaged in unlawful
19 activity, but "suspicions of general criminality are not enough." *U.S. Currency, $30,060.00*,
20 39 F.3d at 1041.

21 **5. Aggregate of the Facts.**

22 The cumulative facts of this case are as follows: (1) a non-sophisticated dog search
23 alerted to the presence of one or more of four possible drugs; (2) Claimant purchased a one-
24 way ticket to a drug source city with a third party credit card one day prior to his flight,
25 (3) Claimant was carrying a large sum of cash in an unsuspicious manner, (4) Claimant made
26 statements about knowing his traveling partner that his traveling partner denied, and
27 (5) Claimant has one prior conviction for marijuana possession. Claimant did not lie to
28

1  authorities about the amount of money he was carrying and did not make inconsistent
2  statements regarding the purpose of his trip or how he obtained the money.

3  The Ninth Circuit has affirmed a district court's grant of summary judgment to the
4  Government when (1) a sophisticated dog sniff alerted to the presence of drugs, and the
5  claimant (2) paid cash for a one-way, same day ticket to a known source city for drugs,
6  (3) was carrying a large sum of cash, (4) made conflicting statements about the amount and
7  origin of the money he was carrying, and his reason for being in a certain city, (5) gave an
8  explanation of his visit that the Government attempted to corroborate and discovered was a
9  lie, (6) was unable to answer several easy questions that one would expect a person to be able
10 to answer, and (7) had been convicted of drug trafficking. *$22,474.00 in U.S. Currency*, 246
11 F.3d at 1215.

12 Conversely, the Ninth Circuit has found the Government's evidence insufficient when
13 (1) the dog sniff was not sophisticated and the claimant (2) paid cash for a one-way, same
14 day ticket, (3) was carrying a large sum of cash, (4) lied about the amount of money he was
15 carrying, (5) used a fake driver's license, (6) exhibited general nervous behavior, and (7) had
16 been detained, but not charged, with a drug related crime. *$49,576.00 U.S. Currency*, 116
17 F.3d 425 at 427-28. The facts that the claimant's actions matched a drug courier profile and
18 that the money appeared to be involved in some illegal activity were insufficient to establish
19 probable cause to justify forfeiture. *Id*. The court of appeals not only reversed the district
20 court's grant of summary judgment to the Government, but concluded that "the government
21 failed to produce sufficient evidence" to support forfeiture. *Id*. at 428.

22 This case is more similar to *$49,576.00 U.S. Currency* than *$22,474.00 in U.S.*
23 *Currency*. The only additional probative fact in this case is that Claimant was convicted of
24 marijuana possession in 1998. But unlike *$49,576.00 U.S. Currency*, Claimant did not lie
25 about the amount of money he carried or use fake identification. The Court finds that an
26 eight-year-old drug possession charge is less probative of current federally prohibited drug
27 activity than an attempt to conceal cash from investigators. On balance, this case involves
28 less suspicious activity than *$49,576.00 U.S. Currency*. Moreover, the Court must apply the

- 9 -

CAFRA standard, which imposes a more exacting burden on the Government than the former probable cause standard. Ninth Circuit precedent and CAFRA therefore require a conclusion that the Government has not met its burden of proof.

This case is very similar to *$58,920.00 in U.S. Currency*, 385 F.Supp.2d 144. There, the district court applied CAFRA and granted Claimants' motion for summary judgment when the only facts supporting forfeiture were (1) a non-sophisticated dog alert, (2) a large amount of cash concealed in clothes inside a suitcase, (3) purchase of airline tickets with cash, (4) general nervous behavior by claimants, and (5) conflicting stories regarding whether the two claimants were traveling together. *Id*. at 151-53. The only relevant distinction between that case and this case is Claimant's eight-year-old drug possession conviction, which the Court has explained is of limited probative value.

**6.     Summary.**

The Government has failed to make a showing sufficient to establish the existence of an element essential of this case – a substantial connection to illegal drug activity – on which the Government will bear the burden of proof at trial. Claimant therefore is entitled to summary judgment. *Celotex*, 477 U.S. at 322.[2] Granted, Claimant's behavior is clearly suspicious and even suggests criminal activity. But suspicious behavior is not enough. The Government must establish a substantial connection to drug crimes before the assets of private citizens can be forfeited, and the evidence adduced by the Government in response to the motion for summary judgment does not meet this standard.

**IT IS ORDERED:**

1. Claimant Edward Leflore's motion for summary judgment (Dkt. #8) is **granted**.
2. The United States shall return the $32,000 to Edward Leflore immediately.

---

[2] Although the Government attempts to link the currency to drug law violations and money laundering, its brief focuses on drug law violations. The Government never explains its money laundering theory, and most of the probative evidence in the case, such as Claimant's conviction for drug possession, supports a violation of federal drug laws more readily than a violation of laws against money laundering.

- 10 -

3. The Clerk of the Court is directed to terminate this action.

DATED this 27th day of April, 2007.

*Daniel G. Campbell*

David G. Campbell
United States District Judge

- 11 -